

FILED

2012 Mar-09  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ROB FLEMING, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  7:09-cv-02462-HGD |
| | ) | |
| ALABAMA CVS PHARMACY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary
judgment on claims of copyright infringement filed by defendant Alabama CVS
Pharmacy, LLC (CVS).  (Doc. 49).  The parties have consented to the exercise of
jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and
Rule 73, Fed.R.Civ.P.

Plaintiff, Rob Fleming, is a photographer who alleges he owns the copyright
rights in two photographs he took in 2008 and 2009.  (Doc. 7, Amended Complaint,
¶¶ 10-12 and Exs. A & B).  In June 2007, Fleming's attorney wrote CVS a letter
complaining that "it has come to the attention of the owners [of Fleming

Photography] that CVS stores in West Alabama allow customers to reprint or reproduce copyrighted professional photos." (Doc. 51-1, Decl. of Peter J. Benson, at Ex. 1).

In mid-2009, after consulting with his lawyers, Fleming came up with an investigative strategy to determine whether his photographs were still being reproduced. (*Id.* at Ex. 4, pre-investigation notes made by Bo Haugebook, an employee of Fleming's counsel and Exs. 1-3, correspondence between plaintiff's counsel and CVS). As part of that plan, Fleming asked his wife, friends and employees to go to several CVS retail locations in western Alabama and use the self-service photo photocopier kiosks located there to make copies of Fleming's photographs. (*Id.* at Ex. 5, Plaintiff's Supplemental Response to Defendant's First Interrogatories ("Pl. Supp. Resp."), at Resp. Nos. 1, 3). Fleming asserts that his agents' use of the self-service kiosks to make copies of his photographs therefore makes CVS liable to him for statutory damages for those "infringing" acts. (*Id.* at Ex. 5, Resp. Nos. 3, 6; Doc. 7, Amended Complaint, at ¶ 53). It is therefore undisputed that each of the copies made by Fleming's agents was expressly authorized by Fleming. Specifically, Fleming admits that his wife, friends, and employees "did the copying at [his] request," and that he and his lawyers "instructed the[se] individuals to make [the] reproductions" of his photographs by using the

photo photocopiers found in CVS stores.  (*See* Doc. 51-1, Decl. of Peter J. Benson, at Ex. 5, Pl. Supp. Resp., Nos. 1, 3 ("The instruction was simple:  go into the store and make copies.")).  Fleming also acknowledges that the photographs he had his agents copy had been taken by him "for the sole purpose" of being reproduced at CVS stores, and thus being used in this litigation.  (*Id.* at Pl. Supp. Resp., No. 5).

The process by which Fleming's agents made copies of his photographs was the same as the way hundred of thousands of other CVS customers similarly make more than two million copies each year of their own snapshots using the self-service kiosks installed at CVS stores.  (Doc. 51-2, Decl. of Grant Pill, at ¶¶ 2-6).  These self-service "photo photocopiers" (called "Kodak Picture Kiosks") operate much like regular office copiers, and they were designed to eliminate any need for store employees to be involved with the labor-intensive process of scanning, editing, and cropping the customers' photographs.  (*Id.* at ¶¶ 3-4).  A complete, step-by-step description of the process by which a customer is able to make a copy of a printed photograph using the Kodak Picture Kiosk is set forth in the Declaration of Grant Pill.  (*Id.* at ¶¶ 5-6 and Ex. A, screenshots from the "Prints From Prints Workflow").  Essentially, though, a customer (1) puts the printed photograph he or she wishes to copy onto the scanning bed, (2) instructs the machine to scan the photo, (3) manipulates the output image to the extent desired (*e.g.*, makes it lighter or darker,

crops the photograph image), (4) selects the number of copies to be printed, and (5) places the order, telling the machine to print the selected number of paper copies. (*Id.* at ¶ 5). Importantly, though, before a customer can do any of the above steps, he or she is first asked to read an on-screen "Copyright Notice" that explains that "[i]t is illegal to reproduce photographs taken by a professional photographer . . . without permission from the copyright owner." (*Id.* at ¶ 6 and Ex. A, at 5). Then, after reading that notice, if the customer still believes that he or she has the right to copy the photograph in question, the customer must certify either that the photograph he or she wishes to copy is not copyrighted or that the customer has "obtained permission from the copyright holder" to make copies of the photograph. (*Id.*). The requirement that a customer certify that he or she has the right to make the requested copies cannot be bypassed or skipped when using the self-service machines. (Doc. 51-2, Decl. of Grant Pill, at ¶ 6). Hence, if the customer does not affirmatively represent that he or she has the lawful right to reproduce the photograph(s) in question, the machine will not allow the customer to make copies. (*Id.*).

Fleming's agents therefore not only had Fleming's permission to make copies of the photos in question (*see* Doc. 50, Undisputed Facts Nos. 3 and 4) and acted at Fleming's instruction when doing so, they affirmatively represented to CVS (by checking the appropriate on-screen box) that they had such permission, and they did

so before they began the process of making any copies. (Doc. 51-2, Decl. of Grant Pill, at ¶ 6). In addition to requiring self-service customers to certify that they have the right to reproduce any photograph they wish to copy, CVS also acts in other ways to discourage unlawful copying of professional photos. (*Id.* at ¶ 8). For example, CVS displays (on the kiosk screens and elsewhere) notices designed to inform customers that professional photographs often are protected by copyright, and it trains its full-service Photo Lab staff to be on the lookout for customer-submitted material that is clearly copyrighted, and if necessary to then verify with the customer that he or she has permission to make the requested copies. (*Id.*). At no point during the self-service copying process described above, however, are any CVS employees directly involved. (*Id.* at ¶ 7). Rather, it is only *after* a customer has finally "placed" his or her order (*i.e.*, requested that the machine print the copies) that an employee must briefly intervene. (*Id.* at ¶¶ 5, 7). Moreover, the extent of the employee's involvement is simply to "key" the self-service machine by entering the appropriate codes so that the customer may then print. (*Id.* at ¶7; *accord* Doc. 51-1, Decl. of Peter J. Benson, at Ex. 5, Pl. Supp. Resp., Nos. 1, 3 (merely alleging that employees entered the necessary codes when asked to do so by Fleming's agents)). Any CVS employee (not just Photo Lab technicians), however, can "key" a machine to enable a self-service customer to print. (Doc. 51-2, Decl. of Grant Pill, at ¶ 7). Nevertheless,

they can do so only after the customer has provided written verification (by checking the appropriate response when the Copyright Notice is displayed) that he or she has the copyright owner's permission to make the copies, just as full-service customers are required to do whenever they seek to copy photographs that bear notices that suggest that the photographs might be copyrighted. (*Id.* at ¶¶ 7-8 and Ex. A). The above-described administrative intervention of "keying" a machine serves two purposes: (1) it reduces the likelihood a customer will print his or her photos and leave the store without paying for them, and (2) it enables CVS to keep track of how many copies the customer is making, thus facilitating the check-out process. (*Id.* at ¶ 7). Employees, though, are not directly involved in the copying process (*i.e.*, scanning, cropping, etc.) itself. (*Id.*).

## DISCUSSION

The Copyright Act of 1976 provides protection to forms of property known as original expression of authorship. Copyrights are a pillar of the American economy. Thus, the protection afforded by the Copyright Act is exceedingly important not only to artists but also to the commercial entities that place copyrighted material into the marketplace. Copyrights protect a broad variety of creative works ranging from

books, paintings and music to computer programs, motion pictures and architectural works, including photographs.

A plaintiff establishes a *prima facie* case of copyright infringement by satisfying two elements. A claim of copyright infringement is established if the plaintiff proves (1) "he owns a valid copyright in a work, and (2) the defendant copied original elements of that work." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (citing *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991)).

## I.   Fleming failed to establish a *prima facie* case of copyright infringement.

Fleming has the burden of satisfying the elements of the *prima facie* case. Initially, the plaintiff bears the burden of proof to submit a valid copyright registration. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010). A "certificate of registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Latimer*, 601 F.3d at 1233 (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)). "Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the 'work in which copyright is claimed is unprotectable.'" *Id.*

Here, Fleming produced a Certificate of Registration number VA 1-658-742 with an effective date of March 28, 2008.  The certificate is for the title of work "Professional Photographs for Rob Fleming Jan. 2008 - March 2008."  Additionally, Fleming produced Certificate of Registration number Vau 981-367 with an effective date of April 16, 2009.  The certificate is for the title of work "Demopolis River." CVS has reserved the right to challenge the copyright registrations should its Motion for Summary Judgment be denied.  For purposes of this motion, Fleming has submitted a valid copyright registration, which meets the first prong of the elements of copyright infringement.

Secondly, as a factual matter, the plaintiff must establish that the alleged infringer actually copied the plaintiff's copyrighted material to establish a *prima facie* case.  *Latimer*, 601 F.3d at 1233.  To satisfy the requirements of the second prong for copyright infringement, the plaintiff must show (1) "whether  the defendant, as a factual matter, copied portions of the plaintiff's work"; and (2) "whether, as a mixed issue of fact and law, those elements of the copyrighted work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *MiTek Holdings, Inc. v. Arce Eng'g, Inc.*, 89 F.3d 1548, 1554 (11th Cir. 1996).  Although not specifically stated in the Copyright Act, there are three forms of copyright infringement:   direct infringement, contributory

infringement and vicarious infringement.  *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S.Ct. 2764, 2776, 162 L.Ed.2d 781 (2005).

### A.    Direct Infringement

"The Copyright Act grants the copyright holder the 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including the reproduction of the copyright work in copies."  17 U.S.C. § 106; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). "Anyone who violates any of the exclusive rights of the copyright owner, 'that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute,' is an infringer of the copyright."  17 U.S.C. § 501(a); *Sony Corp.*, 464 U.S. at 433, 104 S.Ct. at 784. "Direct copyright infringement arises upon a violation of the exclusive rights of a copyright holder."  17 U.S.C. § 501; *BUC Int'l Corp. v. Int'l Yacht Council, Ltd.*, 489 F.3d 1129, 1139 (11th Cir. 2007).

Here, Fleming argues CVS employees directly infringed upon his copyright by reproducing his protected photographs.  However, Fleming's argument is faulty. Fleming instructed his spouse, friends and employees to reproduce his copyrighted photographs at various CVS locations in western Alabama.  Since Fleming is the copyright owner, he "has the exclusive right to do and authorize the reproduction of

the copyrighted work in copies." *Montgomery v. Noga*, 168 F.3d 1282, 1292 (11th Cir. 1999).  Fleming, utilizing his rights under the Copyright Act, authorized his agents to reproduce his work.  Thus, CVS did not directly infringe Fleming's copyrights because Fleming authorized his agents to reproduce his copyrighted photographs.

Fleming argues that CVS employees inserted the "key code" into the kiosk that allowed Fleming's agents to reproduce the photographs, and those actions constituted direct infringement.  CVS houses self-service kiosks within their retail locations to allow customers more privacy and more efficient service.  When a customer attempts to make copies at the kiosk, the customer is given the "Copyright Notice" that explains "that it is illegal to reproduce photographs taken by a professional photographer . . . without permission from the copyright owner."  After reading the notice, the customer must certify either that the photograph he or she wishes to copy is not copyrighted or that the customer has obtained permission from the copyright holder to make copies of the photograph.  In this case, Fleming's agents certified on the kiosk that they had permission to reproduce copyrighted photographs.  By certifying permission to copy, Fleming's agents represented to CVS that they had permission from Fleming to reproduce the photographs.  Only after Fleming's agents certified permission did the CVS employees insert the "key code" into the kiosk.  The

employees did not certify permission to reproduce copyrighted photographs.  Thus, the actions by the employees did not constitute direct infringement.  Therefore, CVS did not directly infringe on Fleming's copyright because the employees did not actually reproduce the photographs.

Even so, Fleming has provided conflicting evidence as to the employees' involvement in reproducing the copyrighted photographs.  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T. Junkins and Assocs. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  When this occurs, the court may disregard the affidavit as a sham. *Id.*  This rule is applied sparingly because of the harsh effect it may have on a party's case.  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).  The Eleventh Circuit has stated "[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the . . . affiant . . . was stating the truth."  *Id.* (quoting  *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986)).  Thus, a court must find some inherent inconsistency between an affidavit and a deposition

before disregarding the affidavit. *Id.* If no inherent inconsistency exists, the general rule applies that allows an affidavit to create a genuine issue even if it conflicts with earlier testimony in the party's deposition. *Id.* (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)).

In this case, Fleming claims that he has produced five affidavits that provide legally sufficient evidence to create a genuine issue of material fact about CVS's direct involvement in the copyright violation. Fleming's initial testimony affirmatively stated his wife, friends and employees made each of the copies and the employee only inserted the "key code." Still, the affidavit concerning the employee performing every action in operating the Kodak kiosk machine was only submitted after the discovery was completed.[1] Prior to the affidavit, Fleming consistently testified in deposition and interrogatories that employees did not make the copies. Based on the inconsistent testimony, the court disregards the subsequent affidavit that states the CVS employee performed every action of reproducing the photographs at the kiosk.

Furthermore, Fleming argues that CVS's conduct is "volitional conduct," thus, sufficient to show that CVS directly engaged in the photograph reproduction process.

---

[1] The subsequent affidavit is also not at issue because the photocopying occurred after the complaint was filed. Therefore, Fleming cannot assert the affidavit as evidence to support his claim.

Fleming cites *Arista Records, LLC v. Usenet.Com, Inc.*, 633 F. Supp. 2d 124, 147-48 (S.D.N.Y. 2009), to support his argument that CVS's actions constituted direct infringement.   In *Arista Records*, the court held that a company, with a policy encouraging infringement plus the ability to stop that infringement, was liable for direct copyright infringement.   CVS actively discourages copyright infringement by placing notices around the kiosk and the "Copyright Notice" on the kiosk screen. Hence, *Arista Records* is not persuasive upon this court.[2]   However in *CoStar Group v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004), the court stated:

> But to establish *direct* liability under §§ 501 and 106 of the Act, something more must be shown than mere ownership of a machine used by others to make illegal copies.   There must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner.   The *Netcom* court described this nexus as requiring some aspect of volition or causation. 907 F.Supp. at 1370.   Indeed, counsel for both parties agreed at oral argument that a copy machine owner who makes the machine available to the public to use for copying is not, without more, strictly liable under § 106 for illegal copying by a customer.   . . .   When a customer duplicates an infringing work, the owner of the copy machine is not considered a direct infringer.

---

[2] In *Disney Enters v. Hotfile Corp.*, 798 F.Supp.2d 1303 (S.D.Fla. 2011), the court found *Arista Records* was not correctly decided.   The court stated the *Arista Records* "conclusion ignores the language of *Netcom* and other cases following *Netcom*.   As the Fourth Circuit put it, 'knowledge coupled with inducement' or 'supervision coupled with a financial interest in the illegal copying' gives rise to secondary liability, not direct-infringement liability."   *Id.* at 1309.

*Id.* at 550.  Fleming claims CVS's volitional conduct consisted of an employee actively inserting the "key code" that is necessary to operate the kiosk.  Also, Fleming asserts that CVS cashiers receive payment for the photographs, which constitutes volitional conduct.   Yet, CVS's conduct did not constitute volitional conduct; Fleming's agents reproduced the photographs.  CVS employees were not actively engaged in the reproduction process except to insert the "key code" required by the kiosk and to accept payment.  Fleming has not produced any evidence that supports his claim that CVS employees willfully reproduced the copyrighted photographs.

Fleming has failed to establish sufficient evidence to create a genuine issue of material fact for direct infringement.  Fleming has the burden to establish a *prima facie* case of copyright infringement but fails to satisfy the second element to establish a case.  Accordingly, CVS did not directly infringe Fleming's copyright, since Fleming, the copyright holder, authorized his agents to reproduce his copyrighted photographs.

### B.    Contributory Infringement

The Copyright Act of 1976 does not specifically hold anyone liable for infringement committed by another person.  Secondary liability, contributory and vicarious liability, is a well established principle derived from common law.  *MGM Studios*, 545 U.S. at 930, 125 S.Ct at 2776.  Contributory infringement refers to the

intentional inducement, causation or material contribution to another's infringing conduct. *Greenberg v. Nat'l Geographic Soc.*, 244 F.3d 1267, 1271 (11th Cir. 2001) (citing *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990)). However, without a finding of direct infringement, there can be no contributory infringement by another party. *Id*.

Assuming Fleming established direct infringement, then Fleming may be able to establish contributory infringement. In order for the defendant to be liable for contributory infringement, the defendant either must have known or should have known of a third party's direct infringement, and despite the knowledge, must have "induced, caused, or materially contributed to" the wrongful conduct. *Cable/Home Comm.*, 902 F.2d at 845. Materially contributed means "the defendant substantially participated in the infringement." *Livnat v. Levi*, 1998 WL 43221, *3 (S.D.N.Y. Feb. 2, 1998).

Here, Fleming asserts that CVS knew or should have known of the infringement because a CVS employee looked at the face of the copyright-marked photograph. Also, Fleming argues CVS materially contributed to the infringement when the CVS employees entered the "key code" into the kiosk and received payment for the copies. However, Fleming's agents represented to the employees that they had permission to reproduce the protected photographs by certifying on the kiosk.

Fleming claims the CVS training manual states that written permission from the copyright owner is required. The training manual states that the photo lab is required to obtain a written authorization from customers utilizing the photo lab services. The training manual does not require a written authorization for customers using the self-service kiosks. Fleming authorized his agents to reproduce the photographs; thus, there was no direct infringement. CVS did not materially contribute because there was no substantial participation by CVS employees.

Accordingly, Fleming also has failed to establish evidence of contributory infringement. Since CVS did not directly infringe Fleming's copyright, CVS cannot be liable for contributory infringement.

### C.    Vicarious Infringement

"Vicarious infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *BUC*, 489 F.3d at 1139; *MGM Studios, Inc.*, 545 U.S. at 930, 125 S.Ct. at 2776. Like contributory infringement, there can be no vicarious infringement without a finding of direct infringement. *Blackwell Pub, Inc. v. Custom Copies, Inc.*, 2006 WL 1529503, *1 (N.D.Fla. 2006); *See Cable/Home Comm.*, 902 F.2d at 845.

In *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985), the Second Circuit provided a test for "right and ability to supervise." The court held the "right and ability to supervise" is established for vicarious liability when "[a]ll persons and corporations who participate in, *exercise control over*, or benefit from the infringement." *Id.*

Even assuming Fleming has established direct infringement, Fleming has not established vicarious infringement. CVS did not supervise Fleming's agents or aid the agents in infringing Fleming's copyright. The Kodak kiosks are self-service kiosks located in CVS stores for customers to use. At Fleming's instruction, Fleming's agents used the self-service kiosks to reproduce copies of Fleming's copyrighted photographs. Since the kiosks are self-service, CVS does not supervise customers using the machines; its employees only input the necessary key code after the customer has certified he or she has permission to copy.

Furthermore, Fleming argues CVS profited from the infringement because CVS made sales that it otherwise would not have made. Yet, not every benefit is a direct financial benefit. *Klein & Heuchan, Inc. v. CoStar Realty, Info., Inc.*, 707 F.Supp.2d 1287, 1299 (M.D.Fla. 2010) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). "The Court cannot assume the infringing activities directly affect profits." *CoStar*, 707 F.Supp.2d at 1298. While CVS charges the same per-print

price to all users of the self-service kiosk, Fleming has not produced evidence to support his argument that the reproductions of the photographs directly affected CVS's profits.  Fleming asserts that the photographs directly affected CVS's profits because the stores charged for the reproduced copies.  However, CVS received a total of $212.89 throughout the Alabama stores where Fleming's agents reproduced the photographs.  The insignificant amount does not amount to enough to directly affect the profits of the various CVS locations in which the transactions were performed. In addition, CVS accepted the applicable amount of payment for reproducing the copies.

In addition, Fleming argues CVS is liable for vicarious infringement based on the test set out in *Gener-Villar v. Adcom Group, Inc.*, 560 F.Supp.2d 112, 131-32 (D.Puerto Rico 2008).  In *Gener-Villar*, the court held that a defendant incurs vicarious or contributory liability "when an infringer, while not engaging in an infringement on its own, has control over the establishment where an infringement occurs, or the means by which an infringement takes place; knows, or has reason to know, that the infringement is occurring, and does nothing to stop it." *Id.*  The court relied on the "dance hall" cases to determine whether the defendant was liable for vicarious infringement. *Id.*

One such "dance hall" case is the *Napster* case.  *A & M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *CoStar*, 707 F.Supp.2d at 1298.  In *Napster*, the court found that Napster's future depended directly on the revenues earned from the infringing activity.  *Id.*  Another "dance hall" case is *Major Bob Music*.  *Major Bob Music v. Stubbs*, 851 F.Supp. 475, 480 (S.D.Ga 1994); *CoStar*, 707 F.Supp.2d at 1298.  In *Major Bob Music*, the court found the defendant was liable for vicarious infringement because she was the sole owner and derived a financial benefit from the operation of the establishment.

Here, following *Gener-Villar* and the dance hall cases cited by Fleming, CVS would not be liable for vicarious infringement.  CVS, as an establishment, does have control over the Kodak kiosk through inserting the "key code" and collecting payments but did not derive a substantial financial benefit.  As well, CVS discouraged infringing activity with the "Copyright Notice."  However, Fleming authorized his agents to reproduce the copyrighted photographs; therefore, no infringing occurred.

Fleming has failed to establish vicarious infringement since there was no direct infringement.  In addition, Fleming lacked evidence to show CVS profited directly from the infringement and had the right and ability to supervise the alleged infringers.

II.   _Olan Mills, Inc., v. Linn Photo Co._ **is not persuasive authority upon the court.**

Fleming urges the court to follow the reasoning stated by the Eighth Circuit in

_Olan Mills, Inc., v. Linn Photo Co._, 23 F.3d 1345 (8th Cir. 1994).  Fleming argues the

facts in _Olan Mills_ are legally identical to the present case except that _Olan Mills_ did

not involve self-service kiosks.  The facts in _Olan Mills_ are as follows:

> In mid-1986, Olan Mills discovered that Linn Photo was engaged in unauthorized copying of photos to which Olan Mills held the copyright.  Olan Mills contacted Linn Photo and requested that Linn Photo cease this activity.

> In 1987, Olan Mills took a number of photos of its employees and their families.  Olan Mills registered its copyrights in four of these photos with the United States Copyright Office.  Olan Mills then hired a private investigator to conduct an investigation into Linn Photo's allegedly infringing activity.  On four separate occasions the investigator ordered reproductions of the copyrighted photos from Linn Photo.  Despite the fact that the photos were clearly marked with a copyright notice, Linn Photo made the reproductions and the investigator paid for them.  For at least three of the requested copies, the investigator signed a "Permission to Copy Agreement" which provided:

>> This is to state that I am the owner of this photo and have not given any one else permission to copyright this photo.  I am submitting it to Linn Photo Company for a copy at my request.  This copy is for my personal use, and I agree to hold harmless, Linn Photo Company or any of its agents, from any liability arising from the copying of this photo.

23 F.3d at 1347.  The court reasoned the "investigator's authority was irrelevant because Linn Photo only obtained a waiver from the copy owner without any inquiry as to whether the copyright owner had waived its statutory right of exclusive reproduction." *Id.*  Based on the facts, the Eighth Circuit held that Linn Photo infringed on Olan Mills' copyright. *Id.* at 1349.

However, the present facts are not legally identical to the facts stated in *Olan Mills*.  Fleming did not hire an investigator but instructed his employees, family and friends to reproduce the photographs using the self-service kiosk.  Fleming's employees, family and friends were acting as Fleming's agents, and Fleming had authority to authorize them to reproduce the photographs.  Unlike *Olan Mills*, the "Copyright Notice" on the self-service kiosks inquires as to whether the customer has permission from the copyright holder to make copies.  The "Copyright Notice" states, "By reproducing this photograph, I acknowledge that the picture I am reproducing is not copyrighted, or I have obtained permission from the copyright holder."  By accepting the terms of the "Copyright Notice," Fleming's agents represented that they had his permission to make copies.  In *Olan Mills*, Linn Photo actually made the copies; whereas, in the present case, Fleming's agents made the copies.

## III.   **Conclusion**

Based on the foregoing, the court finds and concludes that defendant's Motion for Summary Judgment is due to be granted and this action dismissed with prejudice. A separate Final Judgment in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 9th day of March, 2012.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE